IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OUACHITA RIVERKEEPER, INC. AND LOUISIANA ENVIRONMENTAL ACTION NETWORK,** | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:14-CV-4495-L** |
| **U.S. ENVIRONMENTAL PROTECTION AGENCY AND GINA MCCARTHY,** in her official capacity as Administrator of the United States Environmental Protection Agency, | § § § § § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants' Motion to Dismiss (Doc. 12), filed March 20, 2015; Plaintiffs' Unopposed Motion for Oral Argument on Defendants' Motion to Dismiss (Doc. 22), filed April 21, 2015; and Intervenor Georgia-Pacific LLC's Motion to Dismiss (Doc. 24), filed June 24, 2015. After considering the motions, briefs, record, and applicable law, the court **grants** Defendants' Motion to Dismiss (Doc. 12); **grants** Intervenor Georgia-Pacific LLC's Motion to Dismiss (Doc. 24); **denies as moot** Plaintiffs' Unopposed Motion for Oral Argument on Defendants' Motion to Dismiss (Doc. 22); and **dismisses without prejudice** this action for lack of subject matter jurisdiction.

## I.      Factual and Procedural Background

Plaintiffs Ouachita Riverkeeper, Inc. and Louisiana Environmental Action Network (collectively, "Plaintiffs") brought this action against the U.S. Environmental Protection Agency

("EPA") and Gina McCarthy, in her official capacity as Administrator of the United States Environmental Protection Agency (collectively, "Defendants") on December 22, 2014. Plaintiffs seek judicial review Defendants' decision to not object to a draft permit ("Permit") the Arkansas Department of Environmental Quality ("ADEQ") proposed to issue to Georgia-Pacific LLC pursuant to the State's Clean Water Act National Pollution Discharge Elimination System ("NPDES") permit program. Plaintiffs seek an order declaring that the Permit violates the Clean Water Act and remanding Defendants' decision not to object to the draft Permit to the EPA for further consideration. Plaintiffs also seek attorney's fees. Plaintiffs allege that: (1) the Permit authorizes violations of the Administrative Procedure Act ("APA") that the EPA failed to consider; (2) the EPA has failed to explain its decision not to object to the Permit in light of the Permit's illegality under the Clean Water Act; (3) and the EPA based its decision to not object on  factors other than the Permit's consistence with the Clean Water Act. Alternatively, Plaintiffs allege that the EPA's decision not to object to the Permit was arbitrary, capricious, an abuse of discretion, and not made in accordance with the law.

On March 20, 2015, Defendants moved to dismiss the action for lack of subject matter jurisdiction. On June 24, 2015, Intervenor Georgia-Pacific LLC ("Georgia-Pacific") moved to dismiss the action for essentially the same reasons as set forth in Defendants' Motion to Dismiss. The motions have been fully briefed and are ripe for decision.

## II.    Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir.

2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted). Standing pertains to subject matter jurisdiction and can be raised in a Rule 12(b)(1) motion to dismiss. *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006); *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013), *aff'd*, —— F. App'x ——, 2015 WL 4880972 (5th Cir. Aug.17, 2015).   The doctrine of standing deals with the question of who may bring suit in federal court.   *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   A plaintiff must satisfy constitutional and prudential requirements to establish standing.   *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). The issue raised by Defendants' motion is constitutional standing, which requires a plaintiff to establish: (1) injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision.   *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

Challenges to subject matter jurisdiction are either facial or factual in nature.   *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).   If a party relies only its motion, the challenge to subject matter jurisdiction is considered a facial attack, and the court's determination of the motion is based on the sufficiency of the plaintiff's pleadings, which must be accepted as true.   *Id.*   A factual attack of the court's subject matter jurisdiction, on the other hand, "challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). When a motion to dismiss for lack of subject matter jurisdiction is supported by evidence, it is considered a factual attack, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court is, therefore, "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

In response to a factual attack, the plaintiff, as the party seeking to invoke jurisdiction, has the burden of submitting evidence and proving by a preponderance of the evidence the existence of subject matter jurisdiction. *Paterson*, 644 F.2d at 523. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of whether the attack is facial or factual, the party asserting federal jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citations omitted).

## III.    Analysis

Defendants and Intervenor Georgia-Pacific argue, among other things, that the court lacks subject matter jurisdiction because Plaintiffs do not have standing to challenge EPA's decision not to object to the draft Permit issued by the State of Arkansas pursuant to the state's Clean Water Act. Specifically, Defendants contend:

> Plaintiffs lack standing to bring this lawsuit, because the injuries they allege—their members' purported loss of recreational and aesthetic use of the Ouachita River, loss of enjoyment in and value of their properties, and "concerns and anxiety about the potential for future harm" due to Georgia-Pacific's discharges—were not caused by EPA's decision and would not be redressed by a win in this case.

Defs.' Br. at 14 (Doc. 13).  Georgia-Pacific similarly moves to dismiss for lack of standing, arguing: "In this case, presuming—but not admitting—that Plaintiffs have suffered an injury, under no factual circumstances was their injury caused by EPA's decision to not object to the draft NPDES permit, nor would such an injury be redressed by EPA's objection now."  Georgia-Pacific Br. at 19 (Doc. 24).

In response, as to causation, Plaintiffs contend that their alleged injuries were caused by EPA decision because, notwithstanding that the ADEQ ultimately authorized the discharges by issuing the NPDES permit under Arkansas law, EPA made a decision "not to require reform of the ADEQ permit" and "allowed ADEQ to issue the permit as is . . . ." Pls.' Opp'n at 11-12 (Doc. 17).  With regard to redressability, Plaintiffs contend that EPA can still object to the proposed Permit, notwithstanding the that more than four years has passed since ADEQ issued the Permit.  *See id.* at 12-14.

Having considered Defendants' and Georgia-Pacific's respective arguments in support of dismissal for lack of standing, Plaintiffs' response, and applicable law, the court concludes that Plaintiffs have failed to demonstrate that (i) their alleged injuries are fairly traceable to EPA's December 16, 2009 decision not to object to the draft Permit the ADEQ proposed to issue to Georgia-Pacific LLC pursuant to the State's NPDES; and (ii) their members' alleged injuries, if any, are likely to be redressed if Plaintiffs were to prevail in this lawsuit.

With regard to causation, the court concludes that Plaintiffs' alleged injuries are caused by the permitted discharges themselves.  The discharges are caused by third-parties, namely, Georgia-Pacific, which discharged the wastewater pursuant to the permit, and ADEQ, which authorized Georgia-Pacific to discharge the wastewater by issuing the NPDES permit pursuant to Arkansas law.

The permit was issued by the State of Arkansas, not the EPA.  As correctly argued by Georgia-Pacific:

> The problem for Plaintiffs is that the only conceivable cause of their injuries is the Permit itself (which authorized the discharges they claim to be injurious).  The Permit was issued by the State, not EPA.  Therefore, EPA's decision not to object was not the cause of Plaintiffs' alleged injuries.  Instead, the state's subsequent decision to permit the Permit was the cause.  Plaintiffs had the right to challenge this decision on the grounds that the Permit did not meet applicable CWA guidelines, but for whatever reason, they elected not to do so.  The simply cannot be allowed to resuscitate their allegations now, especially here against the EPA, as EPA did not cause their injuries.

Georgia-Pacific Br. at 20 (Doc. 24).

As to redressability, Plaintiffs have not provided the court with any authority under the Clean Water Act, and the court is aware of none, authorizing EPA to object to a proposed Permit more than four years after the final permit has been issued and gone into effect.  The statute specifies a 90-day window within which EPA may object, after which the state is free to issue the permit, which the State of Arkansas did in this instance.  *See* 33 U.S.C. § 1342(d)(2).  ADEQ is the final decisionmaker authorized to issue the permit, and no authority has been provided to this court that would require ADEQ to honor an untimely objection by EPA.

In summary, the court concludes that Plaintiffs lack standing to bring this lawsuit because the injuries they allege were not caused by EPA's decision and would not be redressed by a favorable decision in this lawsuit.

## IV.     Conclusion

For the reasons herein stated, the court **grants** Defendants' Motion to Dismiss (Doc. 12); **grants** Intervenor Georgia-Pacific LLC's Motion to Dismiss (Doc. 24); **denies as moot** Plaintiffs' Unopposed Motion for Oral Argument on Defendants' Motion to Dismiss (Doc. 22); and **dismisses without prejudice** this action for lack of subject matter jurisdiction.

**It is so ordered** this 19th day of January, 2016.

Sam A. Lindsay
United States District Judge